Leon **BOGIEL**, Plaintiff,

v.

**TELEDYNE INDUSTRIES, INC.,** Defendant.

No. 82 C 2124.

United States District Court, N. D. Illinois, E. D.

June 22, 1982.

Zaidenberg, Hoffman & Schoenfeld, Chicago, Ill., for plaintiff.

James G. Hunter, Kevin M. Murphy, Latham, Watkins, Hedlund, Hunter & Lynch, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Leon Bogiel ("Bogiel") filed this products liability action in the Circuit Court of Cook County against a defendant later learned to be Teledyne Industries, Inc. ("Teledyne"). Teledyne then removed the action to this Court, and Bogiel has moved to remand. For the reasons stated in this memorandum opinion and order, Bogiel's motion is granted.

### Facts

Bogiel's lawyer initiated his inquiries about the proper defendant with Bogiel's employer, who referred counsel to the employer's insurance carrier. From the latter the lawyer learned the machine had been manufactured by Precision Welder & Flexo Press Corporation of Cincinnati, Ohio. Cincinnati's current telephone directory, however, listed "Teledyne Precision Cincinnati" in the appropriate category.

Counsel's call to the director-listed number resulted in his being advised that:

(1) the company name was in fact "Teledyne Precision Cincinnati," and

(2) that company and Precision Welder & Flexo Press Corporation were one and the same.

Accordingly the Complaint was drafted against "Teledyne Precision Cincinnati a/k/a Precision Welder & Flexo Press Corporation," and service was made on defendant at the address listed in the telephone directory.[1]

1. Bogiel's success on this motion should not be viewed as a "Let your fingers do the walking" advertisement. Defendant's holdings out to the public and to Bogiel—essentially creating an estoppel—tip the balance on what otherwise might be a close question.

Bogiel's lawyer next heard from a claims examiner with defendant's insurer (nearly a month after the responsive pleading was due, so that defendant was in default). At the claims examiner's request,[2] counsel agreed to an extension of time to answer. In the claims examiner's letter the insurer also identified the insured as "Teledyne Precision."

Soon after the Complaint was filed Teledyne's lawyer called Bogiel's lawyer to say there was no such corporation as Teledyne Precision Cincinnati[3] and the entity Bogiel was seeking to sue was Teledyne Industries, Inc. Teledyne's lawyer said if the Complaint were amended accordingly defense counsel would file their appearance. It was, and they did. Shortly afterward they filed Teledyne's removal petition.

### Timeliness of Removal

Under 28 U.S.C. § 1446(b) ("Section 1446(b)") a removal petition must generally be filed within 30 days after the complaint is received. Section 1446(b) goes on to extend that date under some conditions. It permits a removal petition to be filed within 30 days after defendant receives:

an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable.

Teledyne's removal petition here was filed (1) more than 30 days after the Complaint was served but (2) less than 30 days after entry of the order correcting defendant's corporate name. Teledyne argues Teledyne Precision Cincinnati is not a suable entity, so that the action could not have been removed until the Circuit Court's entry of the order naming Teledyne as defendant. From that it reasons its removal was timely.

Teledyne's contention may be viewed as posing two questions:

2. As the claims examiner's letter put it, there had been a "mix up in [the insurer's] office, and the examiner handling this loss took sick."

3. Records of the Ohio Secretary of State reflect that Teledyne Precision Cincinnati, Inc. was in fact a listed corporation at some earlier time.

(1) Would a federal court "have had original jurisdiction over the action had it been brought there initially"? *People of the State of Illinois v. Kerr-McGee Chemical Corp.,* 677 F.2d 571 at 574 (7th Cir. 1982).

(2) Did the Circuit Court have jurisdiction? Under *Kerr-McGee, id.* at 6:

> a case can be removed to a federal court only if it was properly before the state court. If the state court lacks jurisdiction over either the subject matter or one of the parties, the federal court cannot acquire jurisdiction on removal.

Both questions require "yes" answers to compel remand—and "yes" answers they get.

Because Illinois law provides an unequivocal answer to the second question, it will be dealt with first. Mere misnomer of a defendant does not require dismissal of an action. Ill.Rev.Stat. ch. 110, § 21(3). Under the circumstances here, judgment could have been entered against "Teledyne Precision Cincinnati" and executed against Teledyne based on the original Complaint. *Ingram v. MFA Insurance Co.,* 18 Ill.App.3d 560, 566, 309 N.E.2d 690, 695 (2d Dist. 1974); *A–Z Equipment Co. v. Moody,* 88 Ill.App.3d 187, 43 Ill.Dec. 438, 410 N.E.2d 438 (1st Dist. 1980). Thus the Circuit Court had jurisdiction sufficient to support removal.

Again under the circumstances of this case, the first question—whether this Court would have had jurisdiction over the action had the Complaint been filed here initially—presents no real difficulties either. Plainly the entity Bogiel sought to sue from the beginning is of diverse citizenship from Bogiel. In essence Teledyne asserts it could not tell from the Complaint whether the action was removable, because "Teledyne Precision Cincinnati" did not exist.

But the facts of this case readily distinguish it from cases that have led other courts to divergent approaches in applying Section 1446(b). Those other cases have required inquiry into what if any investigation a party must make to "ascertain" removability: whether it can rely on the face of the pleading it receives, or whether it must look beyond the pleading to a plaintiff's intent.

Thus in *Jong v. General Motors Corp.,* 359 F.Supp. 223 (N.D.Cal.1973) an action became removable on diversity grounds after a defendant was voluntarily dismissed. Defendants filed removal papers more than eight months after they had knowledge of the contemplated dismissal, but within 30 days after receiving plaintiff's formal request for dismissal. *Jong* held, *id.* at 226:

> Therefore, the time period to remove an action cannot depend on defendant's actual knowledge, because the statute expressly allows a defendant to rely on papers presented to it. [citations omitted]. Thus, the defendant does not have to speculate as to facts forming the basis for removal.

*Accord, Bussey v. Seaboard Coast Line Rr. Co.,* 319 F.Supp. 281 (S.D.Ga.1970) (on facts much like those presented here, court permitted removal within 30 days after plaintiff corrected the corporate name of defendant, even though defendant had previously been aware of whom plaintiff was trying to sue).

That analysis may be contrasted with the one employed in *Mielke v. Allstate Ins. Co.,* 472 F.Supp. 851 (E.D.Mich.1979). There the diversity action plaintiff originally failed to specify the claim involved at least $10,000, then amended the complaint to allege more than a $5 million claim. Defendant filed its removal petition within 30 days of being served with the amended, not the original, complaint. In its opinion granting remand the court said, *id.* at 853:

> When the defendant should clearly ascertain from the circumstances and the original complaint that the case is removable, the defendant must remove, if at all, within 30 days of receipt of that complaint. *Lee v. Altamil Corporation,* 457 F.Supp. 979 (M.D.Fla.1978). The only time extension allowed by § 1446(b) is for cases where removability cannot be ascertained until the defendant receives subsequent information from the plaintiff. Some courts construe this to mean

that the elements of removability must be specifically indicated in official papers before the statutory period begins to run. *Jong v. General Motors Corporation,* 359 F.Supp. 223 (N.D.Cal.1973); *Bonnell v. Seaboard A. L. R. Co.,* 202 F.Supp. 53 (D.C.Fla.1962). These cases suggest a policy that does not require a defendant to speculate about jurisdictional elements on pain of losing his right to remove. However, in diversity cases that can best be handled in state court, there is no reason to allow a defendant additional time if the presence of grounds for removal are unambiguous in light of the defendant's knowledge and the claims made in the initial complaint. To permit removal in this case would circumvent the purpose of § 1446(b) which is to limit the time for removal except where the defendant cannot be sure that the case is removable.

This Court need not choose between the two approaches to decide this case. Under Illinois law "Teledyne Precision Cincinnati" *was* in fact Teledyne—that is what *Ingram* and *A–Z* have applied the "misnomer" statute to mean—so that Teledyne has been the defendant from the very beginning.[4] There was no need here for Teledyne to divine Bogiel's intention. Indeed, in a real sense Teledyne knew that intention better than Bogiel himself (or his lawyer): Teledyne was after all the one that dictated the change in designation of the defendant.

In sum, Teledyne held itself out by a different name, and Bogiel relied on that holding out in drafting his Complaint. Teledyne's insurer perpetuated the misdescription when Teledyne itself was already subject to a potential default judgment. On those facts, Teledyne will not be heard to argue that the time clock for removal did not begin ticking simultaneously with the time clock for answer (and judgment). Its removal was untimely.

### Conclusion

This technical legal issue has already delayed the action too long. As the late Judge Sprecher said in *Kerr-McGee,* at 575 "this is exactly the type of 'legal *tour de force*' that lay persons abhor."[5] Bogiel's motion to remand is granted.

---

4. Only *Bussey,* among the few reported cases, dealt with a problem like that posed here. And in *Bussey* it appears plain that the state law was very different from that of Illinois (319 F.Supp. at 282):

Service on Seaboard Coast Line was not effected by serving "The Georgia Railroad, a corporation." . . . Until such amendment [curing the defect as to parties by making Seaboard the defendant] was filed there was *no* defendant, the Georgia Railroad being incapable of becoming a party.

5. *Kerr-McGee* also teaches (albeit in another context) that the removal statute "should be construed narrowly and against removal," *id.* at 576. This opinion serves that principle as well.